UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-81098-CIV-MARRA

KELVIN RANCE,

Plaintiff,

vs.

FLORIDA DEPARTMENT OF
EDUCATION, FLORIDA DIVISION
OF VOCATIONAL REHABILITATION,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants Florida Department of Education and Florida Division of Vocational Rehabilitation's Motion for Summary Judgment (DE 34) and Plaintiff Kelvin Rance's Motion for Partial Summary Judgment (DE 49). The motions are fully briefed and ripe for review. The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, answers, answers to interrogatories and reasonably inferred therefrom, for the purpose of these motions, are as follows:

Plaintiff Kelvin Rance ("Plaintiff") has brought suit against Defendants Florida Department of Education and Florida Division of Vocational Rehabilitation[1] ("Defendants"),

---

[1] The Division of Vocational Rehabilitation is not a separate entity; it is contained within the Department of Education. See Fla. Stat. § 20.15(3)(d). Because this distinction has no effect on the case, the Court will continue to identify these entities as separate defendants.

challenging a final administrative order ("Final Order") that was entered against him.  Count one of Plaintiff's amended complaint alleges that Defendants failed to execute "in accordance with 34 C.F.R. § 361.57(g)(3)(i) (Allow Additional Evidence)."  This count challenges the Final Order's conclusion that Plaintiff's submission of exhibits constituted an untimely request for consideration of additional evidence.  Count two of the amended complaint alleged that Defendants violated 29 U.S.C.A. § 722(b)(1)(A) by requiring him to submit to vocational and psychological testing before agreeing to approve his Individualized Plan for Employment.  (Am. Compl., DE 5.)

On April 20, 2005, Defendants certified Plaintiff as eligible for vocational rehabilitation services. (Certification of Eligibility, DE 30 at 33.)

Mr. Todd Sapperstein is a vocational rehabilitation professional with numerous years of training and service devoted to people with disabilities. (Sapperstein Aff. ¶ 2.)  During the time period of 2005-2006, Mr. Sapperstein was a vocational rehabilitation supervisor ("VRS") for the Florida Division of Vocational Rehabilitation ("DVR"). (Sapperstein Aff. ¶ 3.)  Mr. Sapperstein's duties included overall responsibility for ensuring proper operation of a vocational rehabilitation unit to ensure that DVR's clients were assisted towards the goal of meaningful employment.  Mr. Sapperstein was responsible for developing and approving Individualized Plans for Employment ("IPE"), managing financial resources to ensure efficient provision of services, applying theories and practices of vocational rehabilitation counseling and professional ethics, and having a working knowledge of pertinent state and federal law. (Sapperstein Aff. ¶ 3.)  The mission of DVR is to provide vocational rehabilitation services to persons with eligible disabilities and to help its clients prepare for and engage in eligible employment.  That does not

2

necessarily mean the ideal or exact employment the clients desire, but gainful employment "consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests and informed choice." (Sapperstein Aff. ¶ 4.)

  A proposed IPE was prepared for Plaintiff by Magdalana O'Meara, a vocational rehabilitation counselor.[2] (Sapperstein Aff. ¶ 5; Proposed IPE, DE 54-2.)  Mr. Sapperstein was responsible for deciding whether to approve Plaintiff's IPE in order to provide services.  This determination, which must be made consistent with Florida law, requires that an eligible individual is assessed to determine his or her unique personal qualities and how those qualities bear on the desired employment outcome. (Sapperstein Aff. ¶ 6.)  Under DVR's duly promulgated operating procedures, DVR has a closure policy providing that "[a]n individual's case shall be closed when, despite provision of any and all necessary reasonable accommodations, the individual's actions or inaction materially interfere with providing services including . . . [r]epeated failure to comply with reasonable requests for diagnostic assessments." (Sapperstein Aff. ¶ 8; Chapter 18, Operating Procedures, DE 54-3.)

  Plaintiff requested a course in computer programming based on his prior experience with computers and a desire to hone his skills. (Sapperstein Aff. ¶ 8; 6/27/2005 Case Notes.)  Mr. Sapperstein spoke with Robert Fellman, the co-owner of PC Professor, and, asked if Mr. Fellman had inquired whether Plaintiff's computer knowledge was what he had claimed.  When Mr.

---

[2] Plaintiff points to case notes made by Ms. O'Meara with the title "IPE Planning" which states that the "IPE has been completed and submitted." (9/26/2005 Case Notes, DE 54-4.) Significantly, on the top of the IPE are the words "pending approval." (Proposed IPE.) Subsequent case notes explain that Plaintiff was informed that additional information was needed to be obtained prior to approval of his IPE. (10/11/2005 Case Notes; see also 12/2/2005 Case Notes; 12/5/2005 Case Notes.)

Fellman said he had not made that inquiry, Mr. Sapperstein asked Mr. Fellman to do so. (10/11/2005 Case Notes; Transcript of Administrative Appeal at 107-11, DE 54-10.) The computer course was costly and Mr. Sapperstein was responsible for wisely utilizing DVR's resources. (Sapperstein Aff. ¶ 9.)

Mr. Sapperstein also decided to assess Plaintiff's educational skills through the Test of Adult Basic Education (TABE), which is a "norm-based examination used extensively throughout the United States, especially in adult-education programs, to determine a person's approximate grade level." (Sapperstein Aff. ¶ 9.) Mr. Sapperstein spoke with Plaintiff to tell him that he must take the TABE. Plaintiff refused, stating that he had already taken the TABE in connection with services from another agency. Plaintiff agreed to send Mr. Sapperstein the results of that TABE within two weeks and Mr. Sapperstein sent Plaintiff a letter confirming their agreement. (Sapperstein Aff. ¶ 10; February 10, 2006 Letter from Sapperstein to Rance, DE 54-5.) Mr. Sapperstein never received the TABE results from Plaintiff.[3] (Sapperstein Aff. ¶ 11.)

According to Mr. Sapperstein, there were indications that Plaintiff had a volatile temperament and resorted to yelling and threats. Case notes described an interaction with a staff member in which Plaintiff was "very angry and threaten[ed] to sue" because he was not furnished with copies of his records, "yelled that he wanted a copy of his file, IPE and was going to take VRC to court" and "yelled and did not want to set up an appointment" to discuss his situation.

---

[3] Mr. Sapperstein disputes a remark attributed to him by Plaintiff, and found in the case notes, that he excused Plaintiff from taking the TABE. (Sapperstein Aff. ¶ ¶ 12-13.) Specifically, the case notes state: "Client reported that he refused to take the TABE test because he has a college degree. He reported that he disagreed with the vocational evaluator on this point. Client reported that he spoke with Todd Sapperstein, VR supervisor at the time and that Todd advised him that it was not necessary since he had a degree in electrical engineering." (8/23/2005 Case Notes.)

4

(Sapperstein Aff. ¶ 14; 11/21/2005 Case Notes.)  Mr. Fellman also indicated that Plaintiff "had an attitude and was pushy." (Sapperstein Aff. ¶ 15; 10/11/2005 Case Notes.)

Pursuant to DVR's procedures for assessing its clients in appropriate situations, Mr. Sapperstein decided to refer Plaintiff for a psychological evaluation to assess his intellectual and emotional ability to undertake the computer programming course. (Sapperstein Aff. ¶ 15; Chapter 4, Operating Procedures, DE 54-6.)  Upon arrival at the psychologist's office, Plaintiff refused to sign a consent form and demanded changes to the form, which were not made, and the psychologist refused to conduct the exam. (March 6, 2006 letter from Dr. Martin Segel to Penny Prosser, DE 54-7; 3/6/2006 Case Notes.)

DVR closed Plaintiff's case due to his failures to cooperate with the assessment process. As a result, the proposed IPE was not approved and did not come into existence. Plaintiff was sent a letter informing him of DVR's decision to close his case and informing Plaintiff of his available remedies. (Sapperstein Aff. ¶ 18; Nov. 6, 2006 letter from Penny Prosser to Plaintiff, DE 54-8.)

During Plaintiff's administrative appeal of DVR's decision to close his case, Plaintiff testified regarding the taking of the TABE test:

> Plaintiff:  I did not take the TABE test as Ms. Theresita the case manager and I had talked because -- and I had asked for a ruling by Mr. Sapperstein on that because of my advanced degree and so forth. That was -- I didn't have to take the TABE test per Mr. Sapperstein.
>
> But there should be for the record that the TABE test, I believe that Goodwill had used or had submitted, there was a problem with that. For the record it should be noted all should know this that there was a problem. There was the TABE test scores that Mr. Sapperstein and the Department are referring to, there was a problem there was a conflict there was a big argument -- there was a big -- what is the right word? There was a fiasco that went on or that transpired. Those TABE

5

test scores are very much suspect.

In short what happened was there was an argument between myself and had taken the TABE test and there was an argument as to -- we were in a big room such as we are now. There were several of us taking the TABE test, or taking a bunch of tests. There was a lot of noise going on. There was a lot of discussion when the operator, the supervisor, the person supervising the testing went outside of the door. She was outside the door and heard the noise and she assumed that I had something to do with this noise or disruption that was going on and consequently I was not able to complete or finish the TABE test evaluation. Hence the low TABE test scores. However -- and this information was given to Goodwill who used those TABE test scores and presented those TABE test scores to the Departmental, Vocational Rehabilitation. So, those scores are suspect and are not true scores anyways.

The Court: Are you saying Mr. Rance that you did provide the Department with a TABE test score?

Plaintiff: Somehow the Department thought I did -- no, I know what happened now. At one time I had applied for services -- after I had been turned down from worker's comp. under 440.491. I had applied one to Vocational Rehabilitation.

But two, I had applied also under the unemployment -- the workforce alliance has a scholarship program that will send you to school as well. And they had required a TABE test. And that's the TABE test somehow the Department of Vocational Rehabilitation had gotten those TABE test scores. Those TABE test scores were suspect because of the incident that I discussed. So, I did not physically give the Department a copy of those TABE test scores, I think they got those from -- I'm sure they got those from unemployment or workforce alliance is what they call it now.

The Court: You don't want the Department to rely on those scores?

Plaintiff: Agreed. Those scores are bogus, they are not accurate, they are – since Mr. Sapperstein and I -- what we were talking about with Mr. Sapperstein and I believe it's exhibit 1 of opposing counsel's list. The TABE test scores -- since this was denied and I was denied worker's comp. benefits in which that was subsequently settled, and I am in the worker's comp. program, now and everything is fine. I was given a TABE test evaluation, and a COPS evaluation. I had mentioned that to Mr. Sapperstein and that was the test in the letter that he was talking about.

(Transcript of Administrative Appeal at 84-86, DE 54-10.)

>DVR's counsel:  Mr. Rance, did you or did you not take the TABE test?
>
>Plaintiff:  You need to be more specific.
>
>DVR's counsel: I can't be more specific. I am asking you –
>
>Plaintiff: I have taken the TABE test, yes.
>
>DVR's counsel: So, you have take[n] it?
>
>Plaintiff:  Yes.
>
>DVR's counsel:  When?
>
>Plaintiff:  I have taken several TABE tests.
>
>DVR's counsel:  When was the last one that you took?
>
>Plaintiff:  I don't remember, but that is in the file. That's in my file, yes.
>
>DVR's counsel:  Did you supply those last set of TABE test scores to VOC rehab.?
>
>Plaintiff: No, sir.
>
>DVR's counsel:  When you were relating one of the TABE tests were you –
>
>Plaintiff: I'm sorry, say that again.
>
>DVR's counsel:  Were you thrown out of a TABE test? Is that what you testified to, there was some sort of noise and you were thrown out of the test room?
>
>Plaintiff: Myself and others.
>
>DVR's counsel:  Okay. And others. When was that?
>
>Plaintiff: I don't remember, but it was prior to be even applying for benefits from Vocational Rehabilitation. Those TABE test scores were maybe '02, maybe '03. I'm not exactly sure.
>
>DVR's counsel: So, your testimony is that you took a TABE test at least once and had

> undergone that testing, but yet you had not given those TABE test results to Vocational Rehab?
>
> Plaintiff: I have taken the TABE test several times, and I did not physically give no -- TABE test scores -- I have not personally given those TABE test scores to Vocational Rehabilitation.
>
> DVR's counsel: Did you notify the counselor that you had taken the TABE test?
>
> Plaintiff: Yes, sir.

(Transcript of Administrative Appeal at 91-93.)

With respect to the appointment with Dr. Siegel, Plaintiff provided the following testimony at the administrative hearing:

> And subsequently I was scheduled for an appointment with Doctor Siegel, but I believe the hurricane, Hurricane Wilma had something to do with it, and I couldn't get to that appointment. And then subsequently in December I remember going to talk to Doctor Siegel. And I got to the office, to the window, and that's when Doctor Siegel had presented me with the contract that I did not agree to sign. I did not agree to all of the terms in his prewritten contract. So, I was not allowed to see Doctor Siegel. I did call and make my concerns known to the Division, the Department of Vocational Rehabilitation about the contract with Doctor Siegel and not signing the contract. As a matter of fact I talked to Penny and I made my concerns known about that. So, I did make that effort. So, that is it, Your Honor.

(Transcript of Administrative Appeal at 94.)

Dr. Siegel testified that the consent form presented to Plaintiff was required by HIPAA and the ethics of the profession and that Plaintiff refused to sign it and demanded changes be made to it.  Due to Plaintiff's refusal to sign the consent form, Dr. Siegel did not evaluate Plaintiff. (Transcript of Administrative Appeal at 99-103.)

Mr. Fellman explained that the TABE was necessary for Plaintiff to enroll in the computer programming course.  Mr. Sapperstein told Mr. Fellman that Plaintiff took the TABE and failed it, but that Plaintiff would be allowed to retake the exam.  According to Mr. Fellman, Plaintiff did not

8

take the second TABE. (Transcript of Administrative Appeal at 107-11.)  Mr. Fellman also testified that Plaintiff's failing TABE score was inconsistent with the level of experience Plaintiff claimed to have, which made it all the more important that he have a passing TABE score before he was permitted to take the programming course. (Transcript of Administrative Appeal at 116-18.)

On July 27, 2009, Plaintiff filed this action for review of the final eligibility decision rendered by Defendants. (Compl., DE 1; Am. Compl., DE 5.)  The final eligibility decision is contained in the Final Order dated September 22, 2006. (Final Order, DE 34-1.)  The Final Order adopted the Recommended Order of an Administrative Law Judge,[4] overruled Plaintiff's exceptions to the Recommended Order, did not consider Plaintiff's submission of additional exhibits,[5] and denied Plaintiff's request for relief. (Final Order; Recommended Order, DE 34-2.)

Defendants have moved for summary judgment, contending that Plaintiff's cause of action for review of the Florida Department of Education's final administrative decision is time barred.  Plaintiff's motion for partial summary judgment argues that Defendants have violated federal law by failing to provide a written IPE.  In response to Plaintiff's partial motion for summary judgment, Defendants raised arguments on the merits.  As such, the Court provided Plaintiff notice and the opportunity to respond to those arguments. (DE 57.)

---

[4] The Recommended Order stated that Plaintiff should "undergo a psychological evaluation and take the TABE if he desires an IPE that authorizes funding for computer skills training. If [Plaintiff] refuses to comply, then DVR should attempt to develop an alternate IPE pursuant to which appropriate services other than computer skills training might be afforded." (Recommended Order at 13.)

[5] These additional exhibits are found at DE 30 and DE 32.

9

### II. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477

U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. 242, 249-50.

   III. Discussion

   A.  Statute of Limitations

In moving for summary judgment, Defendants contend that Plaintiff's cause of action for review of the Florida Department of Education's final administrative decision is time barred. Defendants point out that there is no statute of limitations in 29 U.S.C. § 722(c)(5)(J)(i)[6] and compare this case to an appeal of an administrative action under Florida law.  In so doing, they note that Florida appellate procedure only allows 30 days for filing an appeal for review of administrative orders. (DE 34 at 9 citing Fla. R. App. P. 9.110(c)).  In contrast, Plaintiff relies upon 28 U.S.C. § 1658, the four-year catchall statute of limitations for actions arising under federal statutes enacted under December 1, 1990. (DE 43 at 7.)  After careful consideration, the Court agrees with Plaintiff, and finds that 28 U.S.C. § 1658 applies, thereby making Plaintiff's action for review in this Court timely filed.

Congress enacted section 1658 in response to criticism regarding the lack of a uniform federal statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-80

---

[6] This provision provides: "Any party aggrieved by a final decision described in subparagraph (I), may bring a civil action for review of such decision. The action may be brought in any State court of competent jurisdiction or in a district court of the United States of competent jurisdiction without regard to the amount in controversy."  29 U.S.C. § 722(c)(5)(J)(i).

(2004). In particular, Congress sought to limit federal courts' practice of borrowing statutes of limitations from the states. Id.  Section 1658 provides a "catch all" statute of limitations for federal claims arising under federal statutes enacted after December 1, 1990. Id. at 371. Specifically, this statute provides:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a).

Notably, 29 U.S.C. § 722(c)(5)(J)(i), which was enacted in 1998, does not provide a limitations period for its substantive cause of action.  Thus, the four-year catchall statute of limitations set forth in section 1658 would apply to section 722.  Hence, the Court rejects Defendants' request to borrow the 30 day Florida statute of limitations that applies to the appeal of administrative rulings.  Indeed, section 1658 was designed to resolve the problems caused by the lack of a uniform federal limitations period and courts "reconciling apparently conflicting, and often ambiguous, authorities." Sentry Corp. v. Harris, 802 F.2d 229, 246 (7th Cir. 1986).  For these reasons, and based on the clear statutory language of section 1658, and the lack of a limitations period in section 722, the Court finds that Plaintiff's claim is subject to a four year statute of limitations.

Hence, Defendant's motion for summary judgment on the basis that Plaintiff's action is time-barred is denied.

B.  Review of the Final Eligibility Decision

In moving for partial summary judgment, Plaintiff contends that (1) the controlling statutes and regulations do not require the IPE be approved by a supervisor and (2) Mr. Sapperstein's failure to reduce the proposed IPE to writing violated the law. (DE 49 at 7.)  In contrast, Defendants assert that DVR's requirement, as implemented by Mr. Sapperstein, that Plaintiff take the TABE or furnish past TABE results and submit to a psychological evaluation was consistent with DVR's need to assess Plaintiff's abilities. (DE 55 at 4-5.)

Under the Rehabilitation Act, after a hearing officer's decision becomes final, an aggrieved party may bring a civil action for review of such decision.  See 29 U.S.C. § 722(c)(5)(G)-(H) & (J).  The Act requires the district court to:

> (I) receive the records relating to the [due process] hearing ... and the records relating to the State review ... (II) . . . hear additional evidence at the request of a party to the action; and (III) basing the decision of the court on the preponderance of the evidence, . . . grant such relief as the court determines to be appropriate.

29 U.S.C. § 722(c)(5)(J)(ii). "[T]he court should determine whether the agency's decision is supported by a preponderance of the evidence, while giving "due weight" to the conclusions reached in the State's due process hearing."  Reaves v. Missouri Dept. of Elementary and Secondary Educ., 422 F.3d 675, 681 (8th Cir. 2005). This standard of review is "more deferential than de novo review, and requires the district court to refrain from substituting its own notions of sound policy for those of the state authorities." Id.; see also Wasser v. New York State Office of Vocational and Educational Svcs. for Individuals with Disabilities, 602 F.3d 476, 480 (2d Cir. 2010) (while "district courts must engage in an independent review of the administrative record and render a decision based on a preponderance of the evidence . . . the Rehabilitation Act

requires substantial deference . . . and district courts must give due weight to the findings of the state administrative proceedings").

The Rehabilitation Act provides assistance to states "in operating statewide comprehensive, coordinated, effective, efficient, and accountable programs of vocational rehabilitation." 29 U.S.C. § 720(a)(2). These programs are "designed to assess, plan, develop, and provide vocational rehabilitation services for individuals with disabilities, consistent with their strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, so that such individuals may prepare for and engage in gainful employment." Id.; see also 34 C.F.R. § 361.1(b) (same).

Florida law mandates that DVR is responsible for developing an IPE for an individual eligible for receiving vocational rehabilitation services. Florida Statute § 413.30(5) provides in pertinent part:

> 5) When the division[7] determines that an individual is eligible for vocational rehabilitation services, the division must complete an assessment for determining eligibility and vocational rehabilitation needs and ensure that an individualized plan for employment is prepared.
>
> (a) Each individualized plan for employment must be jointly developed, agreed upon, and signed by the vocational rehabilitation counselor or coordinator and the eligible individual or, in an appropriate case, a parent, family member, guardian, advocate, or authorized representative, of the individual.
>
> (b) The division must ensure that each individualized plan for employment is designed to achieve the specific employment outcome[8] of the individual, consistent with the unique

---

[7] "Division" is defined as "Division of Vocational Rehabilitation of the Department of Education." Florida Statute § 413.20(8).

[8] "'Employment outcome' means, with respect to an individual, entering or retaining full-time or, if appropriate, part-time competitive employment in the integrated labor market to the greatest extent practicable, supported employment, or any other type of employment,

>strengths, resources, priorities, concerns, abilities, and capabilities of the individual, and otherwise meets the content requirements for an individualized plan for employment as set out in federal law or regulation.

Florida Statute § 413.30(5).

Federal law also explains that available vocational rehabilitation services are "any services described in an individualized plan for employment necessary to assist an individual with a disability in preparing for, securing, retaining, or regaining an employment outcome that is consistent with the strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice of the individual." 29 U.S.C. § 723(a); see also 29 U.S.C. § 722(b)(3)(B)(i)(I) (explaining that the IPE shall contain a description of the services needed to achieve the employment outcome).

While the purpose behind the Rehabilitation Act is to create "meaningful" employment and opportunities for disabled individuals, that goal is not the same as creating "optimal" or "premium" employment. Berg v. Florida Dept. of Labor and Employment Sec., Div. of Voc. Rehabilitation, 163 F.3d 1251, 1256 (11th Cir. 1998). In creating "meaningful" employment, DVR must assess each client's "unique" abilities. Florida Statute § 413.30(5)(b).

The Court concludes, as a matter of law, that Plaintiff has failed to demonstrate DVR should have approved the proposed IPE prior to receiving the results from the TABE test and psychological evaluation. Both of these evaluations would have served the purpose of determining whether the proposed training and desired employment outcome was consistent with Plaintiff's "unique strengths, resources, priorities, concerns, abilities, and capabilities." Florida

---

including self-employment, telecommuting, or business ownership, that is consistent with an individual's strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice." Florida Statute § 413.20(9).

Statute § 413.30(5); see 29 U.S.C. § 720(a)(2); 34 C.F.R. § 361.1(b). Moreover, the record supports a finding, as a matter of law, that these evaluations were appropriate.[9] The TABE is used frequently in adult education courses to determine a person's approximate grade level. Such an exam would therefore have served to demonstrate Plaintiff's ability to perform successfully the computer coursework. This was especially important given that the computer course was costly and DVR needed to manage carefully its financial resources. (Sapperstein Aff. ¶¶ 3, 9); cf. Berg, 163 F.3d at 1256 ("there is nothing in the Rehabilitation Act that mandates the public, through the defendant, must finance the pursuit . . . of premium employment"). Likewise, the record also supports the agency's determination that Plaintiff's volatile behavior warranted a psychological referral prior to completing the IPE. (Sapperstein Aff. ¶¶ 14,15; 10/11/2005 Case Notes; 11/21/2005 Case Notes.) When Plaintiff refused to comply with the requests for testing and psychological evaluation, DVR did not violate the law by closing his case, pursuant to DVR's written policy, without approving the proposed IPE. See 34 C.F.R. § 361.50(a) (noting that states must develop written policies for providing services for people with disabilities); Chapter 18, DVR's Operating Procedures ("[a]n individual's case shall be closed when, despite provision of any and all necessary reasonable accommodations, the individual's actions or

---

[9] Plaintiff states that controlling law does not require that the IPE be approved by a supervisor. (DE 56 at 5 citing 34 C.F.R. § 361.45(d)(3)(ii)) ("The designated State unit must ensure that. . . [t]he IPE is . . . [a]pproved and signed by a qualified vocational rehabilitation counselor employed by the designated State unit.") However, the law does require that states operate "statewide comprehensive, coordinated, effective, efficient, and accountable programs of vocational rehabilitation." 29 U.S.C. § 720(a)(2). Surely, oversight by an experienced vocational rehabilitation supervisor over the performance of duties by a vocational rehabilitation counselor, which includes drafting proposed IPEs, fits well within this statutory scheme. Moreover, while the federal regulation might not require the supervisor's approval, it certainly does not prohibit this approval.

inaction materially interfere with providing services including . . . [r]epeated failure to comply with reasonable requests for diagnostic assessments."). In other words, DVR's decision to close Plaintiff's case is supported by a preponderance of the evidence.[10] This Court must give due deference to the agency determination and, based on the record in this case, the Court concludes that the September 22, 2006 Final Order was properly supported both factually and legally.

For the reasons stated herein, Plaintiff is not entitled to partial summary judgment. Because Defendants have raised successfully arguments on the merits in their response memorandum, to which the Court allowed Plaintiff an opportunity to respond, the Court finds that the entry of summary judgment on behalf of Defendants is appropriate.

---

[10] After reviewing the additional exhibits that Plaintiff sought to have the agency consider, the Court finds that this evidence provides no support for his claim and had it been considered, it would not have changed the outcome of the Final Order. For example, Plaintiff submitted DVR's Handbook, information with which the agency would have had familiarity. The same can be said about Plaintiff's submission of his own records from DVR. Plaintiff also submitted copies of motions and orders that were part of the record from the Division of Administrative Hearings. Finally, Plaintiff filed portions of the Code of Federal Regulations, which is not evidence, but legal authority. (DE 30 and 32.) Thus, Plaintiff's complaint regarding Defendants' lack of compliance with 34 C.F.R. § 361.57(g)(3)(i) is without merit.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

(1)     Defendants' Motion for Summary Judgment (DE 34) is **DENIED**

(2)     Plaintiff's Motion for Partial Summary Judgment (DE 49) is **DENIED**.

(3)     Summary Judgment is granted on the merits of this action on behalf of Defendants.

(4)     The Court will separately enter Judgment for Defendants.

(5)     The Clerk shall close this case and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of March, 2011.

_____
KENNETH A. MARRA
United States District Judge